1 | Thomas C. Brodersen #128411
**WILLIAMS, BRODERSEN & PRITCHETT LLP**
2 | 2222 West Main Street
Visalia, California 93291
3 | Telephone: (559) 635-9000
Facsimile: (559) 635-9085
4 | *E-mail: brodersen@wbplawyers.com*

5 | Lawson Fite (Ore. Bar #055573), *Pro Hac Vice Pending*
**American Forest Resource Council**
6 | 5100 S.W. Macadam, Suite 350
Portland, Oregon 97239
7 | Telephone: (503) 222-9505
Fax: (503) 222-3255
8 | *E-mail: lfite@amforest.org*

9 | Attorneys for Proposed Defendant-Intervenor

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA
# FRESNO DIVISION

| | |
|---|---|
| SEQUOIA FORESTKEEPER, | Case No. 1:16-cv-00759-AWI-JLT |
| Plaintiff, | |
| vs. | **SIERRA FOREST PRODUCTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE** |
| ERIC LA PRICE, in his official capacity as District Ranger for the Western Divide Ranger District of the Sequoia National Forest; ALFRED WATSON, in his official capacity as District Ranger for the Kern River Ranger District of the Sequoia National Forest; KEVIN ELLIOT, in his official capacity as Forest Supervisor of the Sequoia National Forest; and THE UNITED STATES FOREST SERVICE, | Date: August 8, 2016 <br><br> Time: 1:30 p.m. <br><br> Courtroom: 2, 8th Floor (Fresno) <br><br> Hon. Anthony W. Ishii |
| Defendants, | |
| and | |
| SIERRA FOREST PRODUCTS, a California Corporation, | |
| Proposed Defendant-Intervenor. | |

Williams, Brodersen & Pritchett LLP
2222 West Main Street
Visalia, CA 93291

## I. INTRODUCTION

Sierra Forest Products ("Sierra") is the contractor on both the Frog Project ("Frog") and the Rancheria Forest Restoration Project ("Rancheria"), and is a likely bidder on the another Frog contract. Decl. of Larry Duysen ¶¶ 12, 17, 19, 22-24. This case challenges both projects, seeks supplementation of the underlying Environmental Assessments ("EAs"), and asks for an injunction against both projects. Dkt. 1 ("Compl.") ¶¶ 1-2, 19 ¶¶ a)-c). Sierra's contractual rights, harvest use of the forest, and its economic interest in timber supply all constitute significantly protectable interests justifying leave to intervene under Federal Rule 24. Sierra's narrower contractual, use, and economic interests are not sufficiently represented by the federal defendants in this action. Plaintiff Sequoia ForestKeeper does not oppose the motion. Federal Defendants Eric La Price, Kevin Elliot and the United States Forest Service (collectively "Forest Service") take no position.

Sierra's contractual and other interests entitle it to intervention as of right under Fed. R. Civ. P. 24(a). Sierra may be granted permissive intervention under Rule 24(b). The Court should grant Sierra's motion, and thereby grant Sierra leave to intervene as a defendant.

## II. BACKGROUND

### A. <u>The Frog Project Was Developed to Improve Forest Health.</u>

The Frog Project was initiated in the late 1990's in response to low stand growth, continued large tree mortality due to insect attack and periodic drought, and the high risk of wildfire. U.S. Forest Service, Sequoia National Forest, Western Divide Ranger District, *Final Revision 1 to the Environmental Assessment for the 2000 Frog Project Area Analysis*,

May 2013 ("Frog REA"),[1] at 8-9.  The overall stand densities remain high and stand health continues to decline.  Frog REA at 31.  Forest stand health improvement, via commercial thinning, is the primary management activity but the project has components for fuels reduction and hazard tree removal.  Frog REA at 5-8.

Forest stand health improvement aims to reduce stand densities, promoting growth of older trees and increasing the stand's resilience to insect infestations, drought and wildfire.  Frog REA at 46.  The stand density and fuel reduction treatments increase resiliency by shifting toward fire- and drought-tolerant pine and oak species which is in accordance with scientifically based recommendations to address predicted climate change effects.  Frog REA at 47.  The stands will become more resistant to bark beetle infestations which also increases resiliency to fire.  Frog REA at 46.  Trees within the project area that pose a hazard to public safety will also be removed.  Frog REA at 8.

This method of stand treatment leads to an increase in old growth habitat and reduces the potential for loss of habitat due to catastrophic wildfire.  Frog REA at 29. Species such as the Pacific fisher rely on old growth habitat, so the project's effects on fisher are not significant.  The Forest Service reviewed direct, indirect, and cumulative effects on fisher, and determined the Frog Project would not result in loss of viability for fisher or contribute to potential listing of the species under the Endangered Species Act. Frog REA § 3.6 at 140-197.  Specifically, the project would only affect suitability of 94 acres of fisher habitat.  U.S. Forest Service, *Finding of No Significant Impact: Revision 1 to*

---

[1] The Frog REA may be accessed electronically at
http://a123.g.akamai.net/7/123/11558/abc123/forestservic.download.akamai.com/11558/w

Williams, Brodersen & Pritchett LLP
2222 West Main Street
Visalia, CA 93291

*the Environmental Assessment for the 2000 Frog Project Area Analysis*, May 14, 2013 ("Frog FONSI"),[2] at 10. The Forest Service found, "No mortality of individual fishers is likely to occur because of implementation of this project." *Id.* at 12.

Sierra was awarded the Frog Thinning contract in October 2001, shortly after the initial project development. Duysen Decl. ¶ 24. Sierra began implementing the contract, harvesting on 190 acres by 2003. *Id.* ¶ 19. Work stopped in October 2006 due to an injunction. *Id.* The Forest Service issued its revised Environmental Assessment in May 2013. Frog REA at 1. Sierra resumed operations in 2015. Duysen Decl. ¶ 19. As of the end of the 2015 operating season, Sierra had completed over 83% of the harvest. *Id.* ¶ 21. Only 157 acres remain to be harvested. *Id.* Sierra intends to resume the Frog Thinning work on August 1, 2016, when restrictions relating to fisher are lifted. *Id.* ¶¶ 19, 22. Sierra intends to complete the Frog Thinning contract in 2016. *Id.* ¶ 22. Sierra plans to employ about eight loggers to conduct the harvest, along with three to four truck drivers, and will use the material to keep its 120 mill workers on the job. *Id.* ¶¶ 5, 22. In addition to the Frog Thinning contract, another contract, "Frog II," will be sold in late 2016 to implement the Frog Project. *Id.* ¶ 23. Sierra expects to bid on Frog II. *Id.*

### B. The Rancheria Forest Restoration Project Aims to Improve Forest Health and Public Safety.

The Rancheria Project is designed to promote ecological restoration and reduce hazardous fuels. U.S. Forest Service, Sequoia National Forest, Kern River Ranger District,

---

ww/nepa/75540_FSPLT3_1421146.pdf .

[2] The Frog FONSI is available electronically at
http://a123.g.akamai.net/7/123/11558/abc123/forestservic.download.akamai.com/11558/w

---

*Environmental Assessment, Rancheria Forest Restoration Project*, July 2013 ("Rancheria EA"),[3] at 8. Current conditions have trees that are both smaller and denser than historic trends. *Id.* at 7 (photograph comparison). The project will reduce stand densities through thinning of small to intermediate sized trees. *Id.* at 13. This approach is aimed to retain and promote old forest characteristics, ecosystem structure and function over time. *Id.* at 8. Associated fuels reduction projects would follow thinning treatments and are designed to modify wildfire behavior and create defensible space. *Id.* at 13.

There are several pine plantations within the area that are very dense and at risk to catastrophic bark beetle infestation; thinning treatments will release pine trees and promote resiliency. *Id.* at 33, 47. Currently, second-growth forests in the Rancheria Project area are dominated by shade-tolerant white fir and incense cedar, which despite being native to the area, are less resilient and less adapted to fire than the mature pine and black oak dominated stands historically found in the area. *Id.* at 47. Consistent with historic forest structure, this project is designed to promote mature pine and black oak stands thereby increasing resistance to fire, drought and disease. *Id.*

By increasing old growth forest habitat, this project will retain and restore suitable habitat, including high quality nest sites for the range of habitats used by the California spotted owl, Pacific fisher, and goshawk species. *Id.* at 36. Fuel treatments will also reduce the potential for loss of habitat by changing current conditions to manage flame

---

ww/nepa/75540_FSPLT3_1421185.pdf .
[3] A copy of the Rancheria EA is available electronically at
http://a123.g.akamai.net/7/123/11558/abc123/forestservic.download.akamai.com/11558/www/nepa/72676_FSPLT3_1447372.pdf.

Williams, Brodersen & Pritchett LLP
2222 West Main Street
Visalia, CA 93291

heights and reduce fire behavior intensities. *Id.* at 42. Rancheria Road is a secondary escape route for Alta Sierra (two miles north of the project area), and currently firefighting personnel are at serious risk due to the lack of fuel breaks or safe access routes. *Id.* at 9. By reducing the threat of severe wildfire, the likelihood for potential loss of property and human life will be reduced. *Id.*

Sierra was awarded the Rancheria Stewardship Contract in September 2013. Duysen Decl. ¶¶ 12, 17. The project includes commercial harvest as well as non-commercial biomass reduction on 220 acres. *Id.* ¶ 12. Sierra plans to employ about eight loggers to conduct the harvest, three to four log truck drivers, and will use the harvest to keep its 120 mill workers on the job. *Id.* ¶¶12, 18, 30. Work on Rancheria has not yet started and Sierra does not intend to do any work in 2016. *Id.* ¶ 18. Instead, it is counting on the project to supply operations for 2017, and expects to begin work July 1, 2017, when the relevant limited operating period lifts. *Id.*

### C. **Both Projects Were Subject to Lengthy Prior Litigation.**

This is not the first litigation against either project. Plaintiff and others brought suit against Frog in 2005. *Sierra Club v. Bosworth*, 465 F. Supp.2d 931 (N.D. Cal. 2006). Judge Breyer permitted Sierra to intervene in the litigation. *Id.* at 935. The court determined that the Forest Service was required to analyze new information regarding Pacific fisher, specifically its 2004 designation as an ESA candidate species and the designation of the southern Sierra fisher as a genetically distinct species. *Id.* at 942. Judge Breyer enjoined Frog "until a satisfactory supplemental NEPA review has been conducted" regarding that information. *Id.* In 2013, the Forest Service published the Frog REA, which

Williams, Brodersen & Pritchett LLP
2222 West Main Street
Visalia, CA 93291

reaffirmed the need for the project and examined potential fisher effects. Frog REA at 1. Sierra submitted comments at this stage, as it had for the original Frog project. Duysen Decl. ¶ 24. Judge Breyer then lifted the injunction. *Sierra Club, et al. v. Bosworth, et al.*, No. C 05-00397 CRB, Dkt. 253 (N.D. Cal. June 13, 2013). Notably, Sequoia ForestKeeper did not oppose the motion to dissolve the injunction. *Id.*, Dkt. 252, at 3 (May 13, 2013) (acknowledging new EA "may respond to the narrow scope of Plaintiffs' procedural claim regarding significant new information.").

Rancheria has roots in an earlier, unimplemented project, abandoned at the administrative appeal stage in 2005. Duysen Decl. ¶ 15. Sierra Forest Products participated in the original project development. *Id.* The Forest Service restarted the process in 2010, working with a group called the Sawmill Ridge Collaborative. *Id.* ¶ 16. Sierra Forest Products participated in these collaborative discussions and submitted multiple comments on the project. *Id.* ¶¶ 16-17. The Forest Service issued the Rancheria EA and decision in 2013. *Id.* ¶ 17. Plaintiff and two other groups brought suit against the project in this Court. *Sequoia ForestKeeper v. Elliott*, 50 F.Supp.3d 1371 (E.D. Cal. 2014). They claimed that the Forest Service had violated public participation requirements by releasing specialist reports late in the process and by failing to circulate a draft EA. *Id.* at 1376, 1386. This Court rejected the challenge as it determined the plaintiffs had "placed before Defendants all the information they intended [the] Forest Service to consider." *Id.* at 1387. Sierra Forest Products submitted an amicus brief; however, the Court declined to consider it. *Id.* at 1380; Duysen Decl. ¶ 17.

## III. STANDARDS FOR INTERVENTION

A party may intervene as a matter of right where: (1) The motion is timely; (2) The applicant asserts an interest relating to the property or transaction which is the subject of the action; (3) The applicant is so situated that without intervention, the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) The applicant's interest is not adequately represented by the existing parties. Fed. R. Civ. P. 24(a); *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc). Rule 24(a)(2) "does not require a specific legal or equitable interest." *Id.* at 1179. Rather, "[i]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* Moreover, an intervenor's interest in the litigation is sufficient for purposes of Rule 24 so long as "it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* The Ninth Circuit construes Rule 24(a) liberally in favor of potential intervenors. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). The court is "guided primarily by practical considerations, not technical distinctions." *Id.*

Under Fed. R. Civ. P. 24(b) the court also has discretion to grant permissive intervention to anyone who upon timely motion has a claim or defense that shares with the main action a common question of law or fact. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. *Id.*

In 2011, the Ninth Circuit abandoned its prior court-engrafted constraints on intervention and acknowledged that a motion for intervention should be evaluated based

solely on the Rule 24 intervention factors. *Wilderness Soc'y*, 630 F.3d at 1173. *Wilderness Society* abandoned the Circuit's former rule that only the government could be a defendant in claims under NEPA. The court confirmed that an asserted interest need only relate to the "'property or transaction that is the subject of the action[,]'" and that it was improper to "focus[ ] on the underlying legal claim instead of the property or transaction that is the subject of the lawsuit" in evaluating an intervention motion. 630 F.3d at 1178 (quoting Rule 24(a)). "To determine whether putative intervenors demonstrate the 'significantly protectable' interest necessary for intervention of right in a NEPA case, the operative inquiry should be whether the 'interest is protectable under some law' and whether 'there is a relationship between the legally protected interest and the claims at issue.'" 630 F.3d at 1180. It makes no difference that Sierra is not subject to liability under NEPA; Rule 24(a)(2) does not require a prospective intervenor to be potentially liable to the plaintiffs "on the same grounds as the defendants." *Wilderness Soc'y*, 630 F.3d at 1178-79.

## IV. ARGUMENT

### A. <u>Sierra should be granted intervention as of right.</u>

#### 1. The motion is timely.

Sierra Forest Products meets the standards for intervention of right.

First, the motion is timely. In determining whether a motion to intervene is timely, three factors are weighed: (1) the stage of the proceeding; (2) any prejudice to the other parties; and (3) the reason for and length of any delay. *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002). A motion is generally considered timely if "made at an early stage of the proceedings, the parties would not have suffered prejudice from the grant

of intervention at that early stage, and intervention would not cause disruption or delay in the proceedings." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). Sierra Forest Products' motion is timely because this case is essentially new. The Complaint was filed on June 1, 2016. Dkt. 1. The government's answer is not due until August 5, close to a month after this motion is filed. Dkt. 4; Fed. R. Civ. P. 12(a)(2). No substantive proceedings have occurred and the case management conference is not scheduled until 60 days hence. Dkt. 3; *Citizens for Balanced Use*, 647 F.3d at 897 (holding motion was timely when filed three months after complaint and two weeks after federal defendants' answer). Thus, intervention will not prejudice the existing parties and is timely within the meaning of Fed. R. Civ. P. 24. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding that a motion to intervene was timely when it "was filed at a very early stage, before any hearings or rulings on substantive matters"); *Carpenter*, 298 F.2d at 1125 (reversing denial of intervention where intervenors acted as soon as they had notice a settlement was contrary to their interests). Sierra's motion is timely.

### 2. Sierra has protectable interests.

Sierra satisfies the second Rule 24(a) factor because it has interests that are related to the property or transaction that is subject to the action. These include economic and property interests in its timber contracts and timber supply and non-economic interests in forest health and public safety. Duysen Decl. ¶ 30. The Ninth Circuit liberally construes Rule 24(a), *see Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), and has "rejected the notion that Rule 24(a)(2) requires a specific legal or equitable interest."

*County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980); *Wilderness Soc'y*, 630 F.3d at 1179. Rather, the interest test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno*, 622 F.2d at 438 (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).

### a. Sierra's forestry contracts entitle it to intervene.

First, Sierra is entitled to intervene because it holds the contracts to implement the Frog and Rancheria Projects. "[I]nterests in property are the most elementary type of right that Rule 24(a) is designed to protect." 7C Wright & Miller, Fed. Prac. & Proc. Civ. § 1908.1 (3d ed.). A timber contract that will be affected by the outcome of the litigation entitles the contractor to intervene as of right. "Contract rights are traditionally protectable interests." *Berg*, 268 F.3d at 820. So are interests "in the nature of real or personal property, contracts, or permits. . .". *Sierra Club v. EPA*, 995 F.2d 1478, 1482 (9th Cir. 1993). Such interests are "plainly protectable" and "squarely in the class of interests traditionally protected by law." *Id.* at 1482-83.

Accordingly, courts have consistently determined that timber sale contracts constitute a sufficient interest under Rule 24. *Ctr. For Biological Diversity v. Gould*, No. 1:15-cv-01329-WBS-GSA, 2015 WL 6951295, at *2 (E.D. Cal. Nov. 10, 2015); *Sequoia ForestKeeper v. U.S. Forest Serv.*, No. 1:07-CV-1690-LJO-DLB, 2008 WL 324013, at *3 (E.D. Cal. Feb. 5, 2008); *Sierra Club v. Espy,* 18 F.3d 1202, 1207 (5th Cir. 1994) (reversing a district court's denial of intervention to timber purchaser associations that had "legally protectable property interest in existing timber contracts").

Here, Sierra Forest Products holds contracts to harvest timber under the Frog and Rancheria Projects. Duysen Decl. ¶¶ 12, 17, 19, 24. It likely will obtain another contract under the Frog project. *Id.* ¶ 23. Sierra is depending on the timber from the projects to keep its mill fully operating at current levels. Duysen Decl. ¶¶ 5, 7, 18, 22. For each project, Sierra will employ logging crews of eight plus drivers of three to four trucks. *Id.* ¶¶ 18, 22. Thus, because Sierra Forest Products has the contracts to implement the Frog and Rancheria Projects, it has the required interest to intervene of right.

### b. Sierra has general economic interest in maintaining timber supply.

Sierra also has a broader economic interest in maintaining the supply of public timber on the market. Companies that use public timber have "a broader interest in any litigation that might impede [their] ability to obtain timber from federal lands in the future." *Gould*, 2015 WL 6951295 at *2. Proposed intervenor has an interest in litigation that impedes its ability to obtain harvest from National Forests, which are managed with the goal of "multiple use and sustained yield," 16 U.S.C. § 1607, and with the purpose to "furnish a continuous supply of timber for the use and necessities of citizens of the United States." 16 U.S.C § 475. "Timber companies have direct and substantial interests in a lawsuit aimed at halting logging or, at a minimum, reducing the efficiency of their method of timber-cutting." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3rd Cir. 1998) (reversing denial of motion to intervene by timber companies and groups in environmental litigation); *see also Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) (holding that "[t]he threat of economic injury from the outcome of

litigation undoubtedly gives a petitioner the requisite interest."). The threat of this litigation to timber supply demonstrates intervenors' interest in this litigation. Whether or not Sierra purchases a specific sale, the overall supply of timber will shrink or grow depending on the outcome of this litigation. Proposed intervenor has a direct and substantial interest in being able to harvest the timber offered through the two projects, and a direct and substantial interest in ensuring sufficient timber supply from the Sequoia National Forest.

### c. Sierra has use interests relating to the project area and procedural interests relating to project development.

In addition to its economic interests, Sierra has interests arising from ongoing use of the Sequoia National Forest, including the project area, for harvest, recreation, and other purposes. Sierra has been active in harvest in the Forest for many years. Duysen Decl. ¶¶ 2-5, 14, 19, 24. Sierra employees have regularly visited and used the project area. Duysen Decl. ¶¶ 15, 21, 25. Intervenors generally have sufficient interest in environmental litigation if they have "direct contact with the environmental subject matter threatened by the adverse decision." *Cary v. Hall*, No. C 05-4363 VRW, 2006 WL 6198349, at *2 (N.D. Cal. Sept. 30, 2006) (quoting *Kootenai Tribe*, 313 F.3d at 1109). Intervenor's use of these forestlands, and its desire to see the return of historic and healthy forest conditions, is sufficient under Rule 24. *Citizens for Balanced Use*, 647 F.3d at 897.

Similarly, Sierra was an active participant in framing the design of the Frog and Rancheria Projects, giving it a stake in the ultimate result of this litigation. Sierra has participated throughout the long life of both projects, including comments, administrative

proceedings, and litigation. Duysen Decl. ¶¶ 10-11, 15-17, 24. The Ninth Circuit recognizes that a public interest group generally "is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n*, 58 F.3d at 1397. Similarly, a company should have a right to intervene in a challenge to the legality of a project the company has supported and participated in developing.

### 3. The disposition of this case would have a practical effect on Sierra's protectable interests.

Sierra meets the third prong of the intervention test, practical effect. "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Berg*, 268 F.3d at 822. The third element often follows as a matter of course if the second element is met. *See, e.g., California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it.").

Here, the relief requested by plaintiffs would affect Sierra Forest Products' interests, both legally and practically. Plaintiffs seek to halt or restrict logging on the Frog and Rancheria Projects. Dkt. 1 at 19 ¶ c). They also seek to supplement the Forest Service decision approving the projects and require preparation of lengthy Environmental Impact Statements. *Id.* at 19 ¶ b). An adverse decision would impact Sierra's ability to continue the harvest and would result in direct and substantial harm to Sierra, both economic and otherwise. Because the relief requested would adversely affect Sierra's rights, Sierra has

shown that the disposition of this action would as a practical matter impair its interests, and satisfies the third intervention factor.

### 4. Sierra is not adequately represented by the other parties.

Finally, Sierra Forest Products is not adequately represented in this case. An "applicant-intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation may be inadequate." *Forest Conservation Council v. U.S. Forest Serv.,* 66 F.3d 1489, 1498 (9th Cir. 1995). A proposed intervenor is adequately represented only if "(1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect." *SW Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153-54 (9th Cir. 1998); *see also Friant Water Auth. v. Jewell*, 23 F.Supp.3d 1130, 1149 (E.D. Cal. 2014). The most important factor in assessing the adequacy of representation is "how the interest compares with the interests of existing parties." *Citizens for Balanced Use,* 647 F.3d at 898. Intervention is also appropriate when the intervenor would "likely offer important elements to the proceedings that the existing parties would likely neglect." *Berg*, 268 F.3d at 823.

When the government is the lead defendant, its representation of the public interest "may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use,* 647 F.3d at 899 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)). "Inadequate representation is most likely to be found when the applicant

asserts a personal interest that does not belong to the general public." *Forest Conservation Council*, 66 F.3d at 1499.

The federal defendants here have broader interests than Sierra Forest Products. Sierra has private, vested economic interests in this matter that the federal defendants do not share and cannot be expected to protect. Duysen Decl. ¶¶ 10, 26-29. Sierra also has parochial concerns relating to maintaining employment at its facility, and in Tulare County that are not the focus of the federal defendants' concerns. *Id.* ¶¶ 5-7. Sierra can also add important elements to this proceeding regarding the economic impact of the project, elements of public and private interests, and industry perspective and knowledge on forest health. *Id.* ¶¶ 5-11, 13, 20-21, 30.

There is sufficient divergence between Sierra and the Forest Service that intervention is justified. As the court stated in *Forest Conservation Council*, the government "must present the broad public interest, not just the economic concerns of the timber industry. . . ." 66 F.3d at 1499. Similarly, *Alliance for the Wild Rockies v. U.S. Forest Serv.*, No. 1:15-cv-00193-EJL, Dkt. 51 (D. Idaho June 9, 2016), granted project supporters' request to intervene. "The Federal Defendants' interest is more broadly focused on complying with the requirements of the applicable laws and regulations for management of the lands at issue. The proposed interveners, on the other hand, would defend the Project more vigorously than the Federal Defendants as they are parties with something to lose if this Project is not allowed to go forward." *Id.* at 4.

Sierra's intervention is appropriate to protect its own interests. Previous projects show that the interest of Sierra and the Forest Service may diverge. The Forest Service has

previously canceled or delayed timber sales due to environmental appeals or litigation. Duysen Decl. ¶ 26. On the Frog Project, Sierra's interests diverged from the Forest Service when the Forest Service decided not to appeal the initial injunction. *Id.* ¶ 27. The Forest Service then took seven years to prepare the Frog REA. *Id.* Sierra has intervened in similar litigation on multiple occasions to protect its contract and other rights. *Id.* ¶¶ 28-29. In the just-concluded French Fire litigation, Sierra provided important information to the court regarding the need for speedy harvest and the status of the project. *Id.* ¶ 29; *Ctr. for Biological Diversity v. Gould*, No. 1:15-01329 WBS GSA, 2016 WL 3418437, at *1 (E.D. Cal. June 21, 2016).

Sierra Forest Products has established the requisites for intervention as of right, and should be permitted to intervene as a defendant.

### B. Alternatively, the Court should grant Sierra Forest Products permissive intervention.

District courts have broad discretion to grant permissive intervention. Fed. R. Civ. P. 24(b)(2). So long as an applicant's motion is timely and its "claim or defense and the main action have a question of law or fact in common," a court may grant permissive intervention. In *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002), environmental groups were allowed to intervene under Rule 24(b) where they asserted "defenses of the Roadless Rule directly responsive to the claim for injunction," *id.* at 1110, along with "an interest in the use and enjoyment of roadless lands, and in the conservation of roadless lands, in the national forest lands subject to the Roadless Rule . . .." *Id.* at 1110-11. Permissive intervention "is readily permitted" when proposed intervenors demonstrate

that "they have real economic stakes in the outcome and that the likelihood of future harm to their interest is significant." *Alabama v. U.S. Army Corps of Eng'rs*, 229 F.R.D. 669, 675 (N.D. Ala. 2005). And permissive intervention is especially appropriate when "intervention will contribute to the equitable resolution of this case." *Kootenai Tribe*, 313 F.3d at 1111.

Sierra Forest Products seeks to participate in this case to defend the forest management projects challenged by plaintiffs. Also similar to the successful intervenors in *Kootenai Tribe*, Sierra asserts an interest in the federal timber subject to the challenged EAs. Duysen Decl. ¶¶ 12, 17, 19, 24. Like the successful intervenors in *Alabama*, Sierra has real economic stakes in the outcome. Permissive intervention should be granted.

## III. CONCLUSION

Proposed defendant intervenor Sierra Forest Products respectfully requests that the Court grant the unopposed motion to intervene, as Sierra has satisfied the requirements under Federal Rule 24(a) for intervention as of right, or under Rule 24(b) for permissive intervention.

Respectfully submitted this 7th day of July, 2016.

**WILLIAMS, BRODERSEN & PRITCHETT LLP**

By  /s/ Thomas C. Brodersen
    Thomas C. Brodersen

**American Forest Resource Council**

By  /s/ Lawson Fite
    Lawson Fite
Attorneys for Proposed Defendant-Intervenor

Williams, Brodersen & Pritchett LLP
2222 West Main Street
Visalia, CA 93291

## CERTIFICATE OF SERVICE

I, Thomas C. Brodersen, hereby certify that I, on July 7, 2016, I caused the foregoing to be served upon counsel of record through the Court's electronic service system.

Dated: July 7, 2016　　　　　　　　**WILLIAMS, BRODERSEN & PRITCHETT LLP**

　　　　　　　　　　　　　　　　　By ___/s/ Thomas C. Brodersen___
　　　　　　　　　　　　　　　　　　　　Thomas C. Brodersen