1

2

3

4

5

6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9 SEQUOIA FORESTKEEPER,                    **1:16-cv-0759  AWI JLT**

10            **Plaintiff,**

11                v.                       **MEMORANDUM OPINION AND
                                           ORDER ON PLAINTIFF'S MOTION**
12 **ERIC LA PRICE, in his official capacity as   FOR PARTIAL SUMMARY JUDGMENT
   District Ranger for the Western Divide of the   AND INJUNCTIVE RELIEF**
13 **Sequoia National Forest, ALFRED**
   **WATSON, in his official capacity as District**
14 **Ranger for the Kern River Ranger District of**
   **the Sequoia National Forest, KEVIN**
15 **ELLIOTT, in his official capacity as Forest   Doc. # 8**
   **Service Supervisor of the Sequoia National**
16 **Forrest; and the UNITED STATES FOREST**
   **SERVICE,**
17

18

19            **Defendants.**

20

21        This is an action for injunctive relief by plaintiff Sequoia ForestKeeper ("Plaintiff")

22 against the United States Forrest Service and the individual District Rangers and administrators

23 responsible for Forrest Service decisions in Sequoia National Forrest (collectively,

24 "Defendants").  In this action, Plaintiff, an environmental advocacy organization, seeks to

25 prevent planned activities that it alleges will damage or disrupt the habitat of the Pacific fisher, a

26 small mammal of the weasel family.  The activities Plaintiff seeks to enjoin consist of logging

27 and brush-clearing activities planned for two projects; the "Frog Project" which would thin trees

28 on approximately 1,620 acres of land and the "Rancheria Project" which would thin trees on

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

approximately 5,580 acres of land.  Both projects are located within the Sequoia National

Forrest.  Planned Forrest Service activities on the Rancheria Project were the subject of a prior

challenge by Plaintiff in this court.  See Sequoia ForrestKeeper v. Elliott, E.D. Cal. Case

Number 13cv1721.  In this action, Plaintiff challenges both the Frog and Rancheria Projects on

the ground Defendants violated the National Environmental Protection Act ("NEPA") by failing

to consider "new" information contained in two recent scientific works and failed to take into

account the recently-quantified increase in tree mortality in the Sequoia National Forrest.

Currently before the court is Plaintiff's motion for injunction and/or partial summary judgment.

For the reasons that follow, the court will deny Plaintiff's motions without prejudice.

**PROCEDURAL HISTORY**

The complaint commencing this action was filed on June 1, 2016, and seeks a declaration

that Defendants have violated NEPA with respect to both the Frog and Rancheria Projects, that

Forest Service be required to "supplement their NEPA analyses and submit Environmental

Impact Statements ("EIS's") for both Projects and that Forest Service be enjoined from further

activity until the EIS's are complete.  On July 7, 2016, Plaintiff filed the instant motion for

preliminary injunction, permanent injunction and summary judgment.  On July 31, 2016,

Plaintiff filed a notice of withdrawal of their motion for preliminary injunction in light of Forest

Service's decision to halt the Projects.  The motions for permanent injunction and partial

summary judgment remain.  On July 7, 2016, Sierra Forest Products, Inc., the holder of the

logging contracts for both the Frog and Rancheria Projects moved to intervene as plaintiff.

Forest Product's motion to intervene will be considered in a separate order.

**FACTUAL BACKGROUND**

Although there are no material facts in dispute that bear directly upon Plaintiff's claims

for relief and Defendants' opposition, what is fundamentally in dispute is the considered

opinions of the parties as to whether the treatment plan proposed by Defendants impinges so

significantly on fisher habitat as to outweigh what Defendants assert will be the long term

1
2
3

benefits of the proposed treatment.  With this in mind, the court provides here a brief overview

of the factual context as it pertains to Plaintiff's claim for injunctive relief.

### A.  The Projects

The two projects at issue are established projects that have previously been subject to

environmental review by Forest Service.  The Frog Project commenced in 2000 and included

approximately 1,620 acres of forest in the Greenhorn Mountain Range of the Southern Sierra

Nevada Mountains. It was approved by Forrest Service following an Environmental Assessment

("EA") that concluded the issuance of a Finding of No Significant Impact (FONSI) was

warranted.  The originally planned operation on the Frog Project was altered when the 2001

McNally Fire burned a portion of the Project area.  Following some salvage logging on 190 acres

of Project land, further work was enjoined by the District Court for the Northern District of

California in response to concerns raised concerning the effect of planned activities on habitat

used by the Pacific fisher.  Following the 2006 injunction "Forest service convened an

interdisciplinary team to complete an extensive review of scientific studies and literature and [to]

further assess potential effects of the Frog Project on the fisher, culminating in a Biological

Evaluation spanning rightly 100 pages."  Doc. # 18 at 8:9-11.  Features of the Frog project were

changed as guided by the information generated by multidisciplinary study and a supplemental

EA was undertaken.  Forrest Service issued a FONSI following the re-design of the Frog Project

and the injunction was lifted by the Northern District on June 13, 2013.  Of the 1,260 acres

included in the Frog Project, Forest Service contracted with Sierra Forest Products to thin 780

acres of which 603 acres have been completed.  See Doc. 18 at 8-9.

The Rancheria Project commenced in 2013 and involves 5,580 acres which are also in

the Greenhorn Mountains of the southern Sierra Nevada Range.  As is the case with the Frog

Project, the Rancheria Project consists of a number of "treatments" including tree thinning,

harvest of commercial-sized trees within specified size parameters, brush removal, controlled

burning and related activities.  Forest Service's stated objective in both Projects is to correct

what Forest Service interprets as overcrowded, stunted and/or stressed stands of forest, to reduce

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the probability of tree mortality due to disease and to reduce the probability severe "stand-replacing" fire by removing potential fuel.  Forest service conducted an EA of the proposed Rancheria Project and issued a FONSI on July 15, 2013.  Plaintiff and other environmental organization parties challenged the FONSI in this court in a suit filed in October 2013.  The basis for Plaintiff's earlier challenge was related to the current challenge in that Plaintiff alleged Forest Service failed to adequately consider published scientific opinion on the effect of the proposed Rancheria Project on fisher habitat.  This court granted Forest Services' motion for summary judgment and entered judgment against the plaintiff's in the 2013 case on April 3, 2015.

On July 20, 2016, Forest Service "elected to suspend operation on the Frog and Rancheria Projects while it collected and analyzed additional data on a recent spike in tree-mortality in the Sequoia National Forest."  Doc. # 18-1 at 17:12-14.  Forest Service alleges that further study on tree mortality will inform its decision on whether to issue supplemental environmental assessments and/or to change other aspects of the planned Projects.  See id. at 15-17.  Forest Service further asserts that operations on either project will not commence before July 1, 2017, at the earliest for the Rancheria Project or before August 1, 2017, at the earliest for the Frog Project.

**B.  The Scientific Studies**

Plaintiff avers that the Rancheria Project EA and the amended Frog Project EA both contain references to scientific publications relevant to the Pacific fisher, but neither contains any mention of the following two papers:

Garner, J.D., 2013. Selection of disturbed habitat by fishers (Martes pennanti) in the
    Sierra National Forest.  MS Thesis, Humboldt State University, Arcata,
California.

Zielinski, W.J., C.M. Thompson, K.L. Purcell, and J.D. Garner.  An assessment of fisher
    (Pekania pennanti) tolerance to forest management intensity on the landscape.
    Forest Ecology and Management 310:821-826.

Doc. # 8-2 at 5:18-21.  Defendant do not dispute Plaintiff's allegation that the environmental assessments of both the Frog and Rancheria Projects do not reference these papers.

### C.  Tree Mortality

The parties do not dispute that there has been a marked increase in tree mortality between 2013 and the present.  The increase is both in the number of acres of forest experiencing higher tree mortality and in the frequency of tree mortality per acre.  The increase in mortality appears related to a number of factors including drought and increase infestation by the pine bark beetle, which has spread in response to warming climatic conditions.  The parties also do not dispute that the dramatic increase in tree mortality was not addressed in prior EAs for either the Frog or Rancheria Projects.

### LEGAL STANDARDS

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The relief Plaintiff seeks is injunctive in nature; that is, to enjoin Forest service from logging in the Frog and Rancheria projects and to require the production of an EIS for both projects.  Because Plaintiff has withdrawn its motion for preliminary injunction, the standard for permanent injunctive relief is appropriately applied to the determination of whether injunctive relief is warranted.  As Defendants correctly state, to obtain permanent injunctive relief a party must show "that (1) he has achieved 'actual success' on the merits of his substantive claims, (2)

1
2
3
4

he is likely to sufferer imminent, irreparable harm, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest." Doc. # 18 at 13:19-21 (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

## DISCUSSION

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

As Defendants point out, "'NEPA does not provide a private cause of action.' Earth Island Institute v. U.S. Forest Serv., 697 F.3d 1010, 1013 (9th Cir. 2012).  Instead, a court may review an agency's compliance with NEPA under the Administrative Procedures Act."  Doc. # 18 at 21:18-20.  Under the APA, a party may compel an agency action that is "unlawfully withheld or unreasonably delayed," or may restrain or set aside an action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §§ 706(1), (2)(A).  Plaintiff relies to a significant extent on Portland Audubon Soc. v. Babbitt, 705 709 (9th Cir. 1993) and related case authority for the proposition that under NEPA, an agency is under a continuing obligation to reexamine the significance of planned agency action in the face of new information or changing circumstances.  See id. at 708 (citing Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 370-374 (1989) for the proposition that, where the implementation of an agency plan (such as logging) is ongoing over a period of years, supplemental environmental statements are required where new information indicates continuing government action could be environmentally significant.)

20
21
22
23
24
25
26
27

Both the Frog and Rancheria projects were allowed to proceed following prior legal challenges to Forest Service findings of no significant environmental impact.  In light of the fact that Defendants have suspended action on both projects for the purpose of doing more or less what Plaintiff contends they are obliged to do under NEPA – give consideration to later-published information concerning fisher tolerance for forest thinning and to consider the impact of widespread tree mortality – Defendants contend there is no NEPA violation and Plaintiff's motion for partial summary judgment should be denied.  Plaintiff addresses Defendants' contention in their reply brief by alleging (1) that Defendants violated NEPA by failing to *timely*

28

consider the need for supplementation of their environmental review and (2) that Defendants'

decision to not reconsider the 2013 Garner study was arbitrary and capricious.

This action follows a series of three exchanges of letters between Rene Voss, attorney for

Plaintiff and Defendant Elliott.  Copies of these letters are included as exhibits to the Declaration

of Kevin B. Elliott, Doc. # 18-2.  These letters provide insight as to what information was

available for consideration, when, and what consideration Defendants gave to the information.

The first letter was sent by Voss to Elliott on March 27, 2014.  The letter emphasized the effects

of forest thinning on fisher habitation and constituted "new" information in the opinion of

Plaintiff.  Voss's letter cites three studies:

> Truex and Zielinski (2013) – Short-term effects of fuel treatment on fisher habitat in the
>
>> Sierra Nevada, California; Forest Ecology and Management 293 (2013)[1];
>
> Garner (2013) – Selection of Disturbed Habitat by Fishers (Martes *pennant*) in the Sierra
>
>> National Forest; A [Master's] Thesis Presented to the Faculty of Humboldt State
>>
>> University; and
>
> Hanson (2013) – Habitat Use of Pacific Fishers in a Heterogeneous Post-fire and
>
>> Unburned Forest Landscape on the Kern Plateau, Sierra Nevada, The Open Forest
>>
>> Science Journal 6 (2013) 24-30.

Doc. # 18-3 at 2.  Voss's letter summarizes the findings of each of the studies which collectively

highlight the tendency of fishers to avoid treated and/or thinned landscapes in favor of dense

stands of forest with many snags and extensive forest cover.  Collectively, Plaintiff's first letter

references the three listed scientific papers to support the basic contention behind this action as

follows:

> New information from [the] three recent scientific reports provides
> compelling evidence that a) thinning causes significant adverse effects on
> Pacific fisher resting habitat, finding that Pacific fisher avoid thinned

---

[1]   This is a different publication than the above-referenced publication by Zielinski, W.J., C.M.
Thompson, K.L. Purcell, and J.D. Garner, which is also dated 2013.  For purposes of clarity, the parties
and the court refer to the paper by Zielinski, W.J., C.M. Thompson, K.L. Purcell, and J.D. Garner as
"Zielinski, et al. (2013b)" or as the "Fisher Tolerance" study.

1

2

3

> areas, including treatments focused on fuel reduction, making these
> thinned areas unsuitable for Pacific fisher; and b) mixed-intensity
> wildland fire areas (that are not salvage logged after fire) provide suitable
> foraging habitat for fishers, contrary to previous assumptions upon which
> existing thinning are based.

4

Doc. # 18-3 at 2.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

        The second letter is Elliott's response, dated May 14, 2014, to Voss's first letter.
Basically, Elliott's letter summarizes the history of Forrest Service consideration of each of the
studies and summarizes the conclusions drawn with regard to the projects in which the studies
were considered.  In particular, Elliott's letter responds with respect to the Truex and Zielinski
paper that the paper cited by Voss is the peer reviewed and published version a paper that was
examined in connection with both the Frog and Rancheria projects.  Elliott's letter opines that
the version of the Truex and Zielinski paper cited by Voss "does not present any new research or
information from what was previously examined."  Doc. # 18-4 at 3.  With regard to the Garner
(2013) paper, Elliott's letter states that the information presented in by Garner's thesis "is not
new and has been previously addressed in the Frog, Rancheria and Joey Projects.  We
acknowledged findings similar to those reported in Garner's thesis, specifically that
implementing vegetation treatments may reduce habitat quality in the short term, and may cause
fisher to temporarily leave treatment areas."  Id. at 12.  The Elliott letter goes on to point out
features of the Rancheria and Frog projects that are designed in response to, and are intended to
ameliorate, the negative effects of treatment projects on the suitability of fisher-occupied forest
areas that are pointed out in  the three papers cited by Plaintiff.

21

22

23

24

25

26

27

28

        The final letter of the trio was sent to Elliott by Voss on January 11, 2016 (the "January
11 Letter").  See Doc. # 18-5.  This letter raises three issues.  The first is Plaintiff's observation
that two additional "large thinning, logging and burning projects . . . adjacent to the Frog and
Rancheria projects" are being planned and, if carried out, may threaten the mobility of fishers
living within the project areas and result in genetic isolation of small groups of fishers.  Doc. #
18-5 at1.  The second issue raised by the January 11 Letter is Plaintiff's recent discovery of the
existence of the Fisher Tolerance Study, Zielinski, et al. (2013b).  The January 11 Letter
summarizes the findings of the Fisher Tolerance Study and opines that the rate of treatment

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

planned for both the Frog and Rancheria Projects (as expressed as percent of total project land area treated per year or as acres treated per square mile) exceeds the rate of treatment tolerated by fishers.  The issue of increased tree mortality is not mentioned in the January 11 Letter, but a news release by Forest Service dated June 22, 2015, that announces Forest Service's findings regarding tree mortality is included at exhibit 4 of the Elliott declaration.  The court notes that there is no allegation that Defendants failed to give consideration to the Hanson paper.

As previously noted Forest Service has suspended operations on the Frog and Rancheria Projects and Plaintiff's reply brief acknowledges this fact.  Perhaps as a result, Plaintiff's reply brief reflects a shift the legal theory of Plaintiff's action from the allegation that Defendants *are now* in violation of NEPA because they *have not yet* updated their environmental assessments as required to the allegation that Defendants *did not* engage in the process of updating their environmental assessments as soon as they should have.  The sequence of events that are relevant to Plaintiff's refocused allegations are: (1)  Plaintiffs wrote their second request for re-evaluation on January 11, 2016, and stated that if a written response was not forthcoming by the end of February, 2016, they would consider the request denied; (2)  Plaintiff filed this action on June 1, 2016, and the instant motion for partial summary judgment on July 7, 2016; (3)  Forest Service suspended operations on the Frog and Rancheria Projects on July 20, 2016, and filed their opposition on August 1, 2016, (4) Plaintiff filed its reply on August 8, 2016.  While the inclusion of the Forest Service's news release in the Elliott Declaration suggests that Forest Service was aware of the tree mortality sometime in mid-2016, Plaintiff alleges that they provided Forest Service with the results of a report dated July 13, 2015, that noted the increase in tree mortality.  Plaintiff opines that, in any event, Forest Service was certainly aware of the increase in tree die-off well before the 2016 news release since it's their forest.

### A. *Defendants did not Unlawfully Deny or Unreasonably Delay Action*

Plaintiff advances two legal theories in their reply brief that argue for partial summary judgment and injunctive relief notwithstanding Forest Service's decision to halt the projects and to consider new developments.  The second theory – that Defendants abused their discretion by

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

failing to give consideration to the Garner 2013 study – will be addressed *infra*.  Plaintiff's primary legal theory is that, in waiting until their "hand was forced" by the filing of Plaintiff's action to commit to reevaluation of the environmental assessments, Defendants were in violation of the requirement of the continuing duty under NEPA to continuously "gather and evaluate new information relevant to the environmental impact of its actions."  Doc. # 21 at 5:24-25 (quoting Friends of the Clearwater v. Dombreck, 222 F.3d 552, 558-559 (9th Cir. 2000) ("FOC").  Put differently, Plaintiff avers it is entitled to partial summary judgment and injunctive relief because Defendants did not take action to reevaluate their environmental assessment at the "earliest possible time."

Plaintiff relies on Idaho Sporting Congress, Inc. v. Alexander, 222 F.3d 562 (9th Cir 2000) ("ISC") for the proposition that Defendants are under a continuing obligation to review and evaluate new information and to revise prior conclusions regarding environmental impacts where it "determines that the new information is significant."  Id. at 566.  Defendants do not dispute this point.  Plaintiff's substantial reliance on ISC, along with the Ninth Circuit's decision in FOC are cited by Plaintiff to illustrate situations where courts have found agencies in violation of NEPA for failure to *timely* consider new information.  For the reasons that follow, the court finds the legal authority cited by Plaintiff is insufficient to justify injunctive relief at this time on the current facts of this case.

Both ISC and FOC recognize and approve of the mechanics commonly employed by agencies to evaluate new information to determine if it is "significant" such that amendment or supplementation of prior NEPA documents is required. In both cases, the agency involved produced a Supplemental Information Report ("SIR") that examined the new information and reached a conclusion as to whether the new information is "significant."  See ISC 222 F.3d at 566 (noting several courts have upheld agency use of SIR's for the purpose of determining whether a supplemented EA or EIS is required); FOC 222 F.3d at 555 (recognizing that SIR's are Forest Services "formal instruments for documenting whether new information is sufficiently significant to trigger the need for [a supplemented EIS]").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

The ISC case is factually distinguishable from the case at bar to the extent it offers no support for Plaintiff's claims for injunctive relief.  In ISC the NEPA documents originally prepared by the Forest Service were held deficient as a matter of law pursuant by the Ninth Circuit's ruling in a related case, Neighbors of Cuddy Mountain v. United States Forest Service, 137 F.3d 1372 (9th Cir. 1998).  The violation the ISC court found pertained only tangentially to the failure of the Forest Service to timely consider significant "new" information.  In ISC the Forest Service attempted to use SIRs to *supplement* the original, deficient NEPA documents.  In finding that an SIR is not a proper means for supplementing an EA or EIS the ISC court observed that an SIR is not a document recognized by NEPA regulations.  ISC, 222 F.3d at 565-566.  The court observed "NEPA is a procedural statute, and we have held that 'agency action taken without observance of the procedure required by law will be set aside.'  [Citation.]  Yet if the Forest Service were permitted to correct deficiencies in an EA or an EIS by means of an SIR or another non-NEPA procedure, the regulations governing the supplementation of NEPA documents promulgated by the CEQ, as well as the Forest Service's own rules on the issue, would be superfluous."  Id. at 567.

17
18
19
20
21
22
23
24
25

While the obligation of agencies to be continuously alert for new information that could alter an original NEPA assessment is well established; see Marsh v. Oregon Natural Res. Council, 490 U.S. 377, 378 (1989), the "timing" issue criticized in ISC differs significantly from the facts of this case.  In ISC the Forest Service issued inappropriate documents (SIR's) to supplement its previous deficient NEPA documents "in response to litigation, *years* after the original decisions to approve the timber sales were made.  Furthermore, although the public was given an opportunity to comment on the SIRs, the Forest Service's decision making process was not formally reopened and no administrative appeal of the SIRs was permitted."  Id. at 568 (italics added).

26
27
28

Here, unlike the case in ISC, Forest Services original NEPA documents were found to be sufficient when challenged by Plaintiff.  Arguably, Forest Service might have begun the process of formal evaluation of new information as much as a year prior to the time they did start.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

However, the underlying error charged to Forest Service in <u>ISC</u> – the refusal of Forest Service to correct the known legal deficiencies in its NEPA documents through NEPA-approved procedures – cannot be alleged in this case.  As the court understands it, the major factual feature of concern to Plaintiff's in this action is the marked increase in tree mortality in the Project regions.  Unlike the situation in <u>ISC</u> where the original NEPA documents had been deemed insufficient as a matter of law, Defendants in this action faced (and continue to face) a dynamic situation (tree mortality) that has no currently-known endpoint that would clearly and unambiguously indicate a particular path of action.  There is nothing in <u>ISC</u> to support the proposition that an agency is in violation of NEPA if it fails to address a changing factual situation in some particular amount of time.  Rather, 5 U.S.C. § 706(1) permits a party to seek an order compelling agency action when the action is "unlawfully withheld or unreasonably delayed."  <u>Id.</u>  The court finds that the Ninth Circuit's decision in <u>ISC</u> does not lend support to the contention that the delay, if any, between the time Defendants conceivably *could have* undertaken review of new information and the time they actually did undertake review was unreasonable.

Friends of Clearwater also fails to support Plaintiff's action for injunctive relief; albeit for a somewhat different reason.  The factual context presented in <u>FOC</u> is closer to the case at bar but still distinguishable.  In <u>FOC</u> the defendant Forest Service completed an EIS in 1987 in connection with a forest logging plan.  About 10 years later, "individuals and environmental groups [. . .] wrote the Forest Service.  They noted that it had been more than ten years since the Forest Service completed the original Wing Creek – Twentymile EIS, and that during that time the steelhead, chinook salmon, and bull trout had been listed under the Endangered Species Act, the lynx had be proposed for listing and endangered grey wolves had been reintroduced into central Idaho."  <u>FOC</u>, 222 F.3d at 555.  In response to the letter, Forest Service prepared a total of three SIRs , the cumulative conclusion of which was that the new information did not require any supplementation of prior NEPA documents.  The environmental groups then sued challenging Forest Services' determination to not prepare a supplemental EIS.  <u>See</u> <u>Id.</u>

1

2          During the litigation in FOC, the plaintiffs shifted the focus of their challenge from the

3     list of species noted in their prior letter to Forest Service to a separate list of seven species that

4     had been designated as "sensitive by Forest Service in the years prior to the litigation but which

5     had not been addressed in the original NEPA documents or in the SIRs prepared by Forest

6     Service in advance of the litigation." Id. Of particular relevance to Plaintiff's reliance on FOC,

7     the FOC court noted that, after the institution of the legal action, Forest Service did give

8     consideration to the new information regarding the species that had not previously been

9     examined and "prepared an additional SIR and several other analyses that specifically address

10    the significance of the new information at issue." Id. at 559.

11          The FOC court found that Forest Service *had* violated NEPA by failing to timely

12    consider the impact of the projects on species that they had designated as "sensitive." However,

13    the FOC court noted the difference between an action brought to challenge an agency final

14    decision pursuant to 5 U.S.C. § 706(2), and an action to compel agency action unlawfully

15    withheld or unreasonably delayed" pursuant to § 706(1). In the former case, a reviewing court

16    relies only on the information that was before the agency when the final action was taken;

17    however, in the latter case a court reviewing an action to compel agency action the court may

18    review and consider information that becomes available after the institution of legal proceedings.

19    See FOC, 222 F.3d at 560. Based on this distinction, the FOC court concluded that, although

20    Forest Service had violated NEPA in the first instance, the plaintiffs in that case were not

21    entitled to injunctive relief because Forest Service subsequently rectified their error. See FOC at

22    561 (concluding Forest Service's conclusion following review during litigation that a

23    supplemental EIS was not warranted was not an abuse of discretion and that plaintiffs were

24    therefore not entitled to injunction).

25          The court concludes that Plaintiff has failed to allege facts to show that Defendants'

26    delay in undertaking consideration of "new facts" was unreasonable, arbitrary or an abuse of

27    discretion. The court also concludes that, even if the delay had been somehow unlawful,

28    Plaintiff is not entitled to injunctive relief at this time because Defendants are currently in the

-13-

1

2

process of undertaking the consideration of new facts.  The court interprets <u>FOC</u> to stand, in part,

3

for the proposition that it is not appropriate for a reviewing court to compel an agencies' conduct

4

by way of injunction when the agency is already engaged in the required conduct.  Plaintiff's

5

request for injunctive relief pursuant to 5 U.S.C. § 706(1) will therefore be denied.

6

### B. Refusal to Consider Garner 2013 Study is not Abuse of Discretion

7

Plaintiff alternatively contends that Defendants violated NEPA by failing to give re-

8

consideration to the 2013 Garner study; particularly to one of the conclusions of that study that

9

was emphasized to Defendants in the first of the letters from Voss to Elliott. In that letter,

10

Plaintiff cites what it considers Garner's primary finding as follows:

11

12

> [Garner] found that 'when selecting microsites within their home ranges,
> fishers tend to avoid using sites within 200 meters of a treated (thinned)
> area.' [Citation.]  Garner found that 'as fishers are selecting foraging and
> resting sites within their home ranges (third-order selection), they tend to
> avoid treated areas in favor of sites within untreated forest, corroborating
> previous findings (Truex and Zeilinski 2013).' [Ciatation.]"

13

14

15

Doc. # 18-3 at 4.

16

Defendants' (Forest Services') response to Voss's first letter is found at Document 18-4,

17

pages 5-7.  In their response letter, Defendants make it clear they have given the Garner (2013)

18

letter a close read and careful consideration as a part of the original NEPA documents for the

19

Frog and Rancheria Projects even though the paper was not specifically referenced in the

20

original NEPA documents.  As Defendants noted in their reply to Voss's letter, "[w]e

21

acknowledge findings similar to those reported in Garner's thesis, specifically that implementing

22

vegetation treatments may reduce habitat quality in the short term, and may cause fisher to

23

temporarily leave areas." Doc. # 18-4 at 5.  Of particular significance to this opinion,

24

25

Defendants noted in their response letter:

26

27

> We agree with Garner (2013) that short term negative impacts of
> management actions may affect habitat beyond the one year post
> treatment.  In the fisher biological evaluations for the relevant projects

28

-14-

> Forest Service personnel analyzed change in canopy closure and change in
> basal area of live trees >24" [diameter at breast height ("dbh")] and snags
> >24" dbh for 40-50 years to determine the length of recovery post
> treatment compared to post uncharacteristically severe wildfire.

Doc. # 18-4 at 7.

It is important to understand that Plaintiff does not contend that Defendants did not give

consideration to the Garner (2013) study in the first instance.  Rather, Plaintiff contends that

Defendants acted arbitrarily and capriciously by refusing to reexamine and reinterpret the Garner

paper according to the interpretation and significance placed on it by Plaintiff.  The above-

quoted paragraph, considered along with Plaintiff's criticisms of it, illuminates the underlying

conflict at the core of this action.  Basically, the court interprets that underlying conflict thus:

Defendants seek to carry out forest treatments aimed at promoting more resilient, less crowded

forest stands that are less susceptible to catastrophic fire.  It is implicit in Defendants' response

to the first Voss letter and from their opposition that Defendants view some short-term sacrifice

of quality of habitat vis-à-vis fishers as justifiable in light of what they anticipate are the long-

term benefits.  Plaintiffs, in contrast, have implicitly adopted a more short-term view of the need

to maintain quality of fisher habitat and view the risk of "catastrophic stand –replacing fires" as

acceptable when compared to what they understand are the benefits of untreated or minimally

treated fisher habitat that is subject to the occasional "mixed-intensity" fire.

Plaintiffs criticize Defendants' interpretation and evaluation of the Garner (2013) study

as conclusory, as reliant on the unpublished anecdotal observation that fisher scat has been

observed in previously treated areas and as failing to clearly define the parameters of long-term

and short-term consideration.  At the present time, the court finds that Defendants' response to

the first Voss letter evinces adequate, if not thorough, consideration of the information contained

in the Garner (2013) study and finds that Defendants' reliance on their own observation of

evidence of fisher use of forest areas that have been previously treated is not an abuse of

discretion.  The court also finds that neither party has been completely clear about what time-

frames are being referenced when the use or avoidance of fisher habitat is being alleged, but also

finds that this lack of clarity does not amount to arbitrary decision making or to an abuse of

discretion in light of Defendants' apparent consideration of long-term benefits versus short term

risks.  The court finds Defendants' interpretation of the information contained in the Garner

(2013) study is not an abuse of discretion.

          The court concludes that Plaintiff has not demonstrated either success on the merits or a

substantial likelihood of success on the merits under the facts of the case as they now stand.

This court has previously opined "that differences of opinion on such technical matters such as

the relative benefits or detriments of intense fire on Pacific fisher populations cannot be the basis

of relief from a final agency decision."  Sierra ForestKeeper v. Elliott, 13-cv-1721, Docket No.

43 at 7:19-21.  The court remains of the opinion that the sort of controversy that appears to

underlie this action – a controversy typified by differences in opinion on the values of mutually

recognized long and short term goals and risks – is not proper subject matter for determination

by a district court in an action under NEPA.  That said, the court cannot be certain that Forest

Service's promised consideration of the significance of new information on current plans for the

Frog and Rancheria projects will not give rise to a meritorious claim for injunctive relief.  The

court is certain, however, that no action by the court is appropriate in advance of a determination

by Defendants as to whether the change of circumstances is significant so as to warrant a

supplementation of prior NEPA documents.  The court will therefore deny Plaintiff's motion for

partial summary judgment and injunctive relief without prejudice.

1    THEREFORE, for the reasons discussed above, it is hereby ORDERED that Plaintiff's

2    motion for partial summary judgment and injunctive relief is DENIED without prejudice.

3

4

5    IT IS SO ORDERED.

6    Dated:   September 21, 2016             _____

                                              SENIOR   DISTRICT   JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-